```
UNITED STATES DISTRICT COURT
   NORTHERN DISTRICT OF INDIANA
        SOUTH BEND DIVISION
```

| | | |
|---|---|---|
| JAMIE R. GUNN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:10-CV-527 CAN |
| | ) | |
| MICHAEL J. ASTRUE | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

On June 17, 2011, *pro se* Plaintiff, Jamie R. Gunn ("Gunn"), filed her complaint seeking review of the final decision of the Defendant, Commissioner of Social Security ("Commissioner"). She filed her opening brief on June 17, 2011, and the Commissioner filed his response on September 26, 2011. Gunn filed her reply brief on October 24, 2011. This Court now enters its ruling based on the consent of the parties and 28 U.S.C. § 636(c).

**I.    PROCEDURE**

On December 12, 2005, Gunn filed for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"), as well as supplemental security income ("SSI") under Title XVI of the Act. Her application arose from an alleged disability beginning on September 30, 2005. Her claims were denied on June 21, 2006 and again upon reconsideration on August 10, 2007. On September 19, 2007, Gunn requested a hearing before an administrative law judge ("ALJ"). She appeared and testified before the ALJ on December 16, 2009. On September 1, 2010, the ALJ issued his decision, denying Gunn's application for DIB and SSI. Gunn then filed her complaint in this Court pursuant to 42 U.S.C. § 405(g).

**II.    ANALYSIS**

A. Facts

Gunn was born on November 16, 1964. She was 45 years old when the ALJ rendered his decision. Her highest level of education is a certificate in computer information management. She has prior work experience as a hotel/motel manager, office manager of a tree service, and as a lumber yard quality control manager.

1. Medical Evidence

In January 2006, Gunn went to the hospital complaining of shortness of breath, swollen ankles, and a persistent cough over the previous two months (Tr. 499). The attending physician noted that Gunn had a history of cocaine abuse and congestive heart failure. *Id*. She admitted to a history of daily crack cocaine use, but claimed she had not used cocaine for the previous two months. *Id*. Her physical examination was unremarkable (Tr. 499-500). Gunn was diagnosed with congestive heart failure, a history of cocaine abuse, and a history of tobacco abuse (Tr. 500).

In April 2006, Dr. John Jenkins, Gunn's treating cardiologist, stated that he thought "things [had] been stable for her (Tr. 478)." His examination of Gunn was unremarkable, and he emphasized to her the importance of quitting her illegal drug use (Tr. 479).

In August 2006, Gunn again went to the hospital complaining of an increased shortness of breath and chest pressure (Tr. 370). She was diagnosed with congestive heart failure, cocaine dependence, and drug withdrawal (Tr. 365). Her condition improved and she reported that she was feeling much better on her release date (Tr. 366). The attending physician was unable to determine that Gunn's heart was enlarged. *Id.* The physician stated that Gunn would be able to resume all normal physical activities. *Id*.

In October 2006, Gunn entered the hospital complaining of chest pain (Tr. 407). The attending physician noted that Gunn had heart disease from a previous heart attack, which was likely caused by cocaine use. *Id.* A toxicology test was performed and was positive for barbiturates, cocaine, and opiates. *Id.* The attending physician stated that Gunn's heart failure symptoms had been largely resolved, but noted that she continued to be very weak due to poor cardiac output (Tr. 408). Her final diagnoses were substance abuse and heart disease (Tr. 407). Further, the attending physician discussed the possibility of bringing in a hospice service due to Gunn's previous problems of complying with medical orders (Tr. 408).

In April 2007, Gunn went to the hospital complaining of shortness of breath (Tr. 290). She said that because of sleeplessness, she had not been taking her medications for the previous four days. *Id.* She also stated that she had not consciously used cocaine since the prior New Year's Eve, but that she had found white powder at the bottom of her drinking glass the night before. *Id.* She alleged that she may have been drugged by a male friend. *Id.* Gunn was admitted overnight, and her shortness of breath had improved the next day (Tr. 287). Her diagnoses included congestive heart failure, chronic hypertension, multiple substance abuse, and severe noncompliance with doctors' orders. *Id.*

In September 2007, Dr. Jenkins stated that Gunn was able to work in a sedentary job (Tr. 215). He believed that this type of job would be difficult for Gunn to find because she was not reliable. *Id.* Gunn's cardiac condition was reported as stable in April 2008. *Id.*

In March 2009, Gunn underwent a residual functional capacity ("RFC") evaluation by a physical therapist (Tr. 173). Gunn was able to lift up to 20 pounds from the floor to shoulder level with good form, and she limited herself from lifting more (Tr. 179). The physical therapist

3

noted that she did not display any signs of physical discomfort during the examination (Tr. 184). He further found that Gunn's overall test findings suggested the presence of variable levels of physical effort (Tr. 182). Gunn stated that she had made remarkable improvement in her physical abilities since the previous year (Tr. 184). She felt that she was getting better and stronger overall. *Id.* The physical therapist found Gunn's subjective reports of pain and associated disability to be both reasonable and reliable. *Id.* He recommended that she continue to slowly increase her functioning and exercise levels. *Id.* Based on her RFC performance, the physical therapist recommended that Gunn consider work in the sedentary physical demand category. *Id.*

In April 2009, Gunn went to Dr. Jenkins for a follow-up examination (Tr. 167). His assessment stated that there was nothing to clearly indicate heart failure at that time, and that Gunn "continue[d] to do well." *Id.* Dr. Jenkins also wrote a letter to Gunn's attorney concerning her heart condition (Tr. 199). He believed that Gunn was doing well because she was living at a transitional home and eating better and taking care of herself. *Id.* He reported that Gunn had severe heart disease and that Gunn's heart was not pumping a sufficient amount of blood. *Id.* However, Gunn was clinically stable at that time and was not experiencing any congestive heart failure. *Id.* He also reported that many of Gunn's past problems were caused by previous drug abuse, but that she was not currently on drugs. *Id.* In his opinion Gunn was very limited in terms of what she could do because her breathing capacity was diminished due to her heart function. *Id.* In his opinion, as far as her heart was concerned, Gunn was totally disabled. *Id.*

Dr. Jenkins wrote another letter to Gunn's attorney in September 2009 to update him on Gunn's heart condition (Tr. 198). He stated that Gunn was doing reasonably well the last time

that he had examined her. *Id.* His biggest concern was that she had previously had severe heart problems and had been a drug abuser. *Id.* He believed that Gunn could do some part-time work, but was unsure if she could do full-time work because of her heart condition. *Id.*

Dr. Jenkins wrote another letter in December 2009 indicating that he did not believe Gunn could return to a full-time job (Tr. 125). He believed that Gunn could lift 25 pounds occasionally, but not for any sustained time period. *Id.* He also stated that she would be greatly limited in performing any type of strenuous physical activity. *Id.* He believed that it would be advantageous for Gunn to do part-time work in light of her heart condition. *Id.*

### 2. ALJ Hearing on December 16, 2009

#### a. Gunn's Testimony

At the time of the hearing, Gunn was working part-time at the front desk of a hotel (Tr. 583-584). She alleged that she could not work full-time because when she did, she would get light-headed, suffer from a lack of energy, and could barely move (Tr. 591). Further, she claimed that she had numbness in her legs and arms, and had chest pains. *Id.* In her position at the hotel she checked guests in and out, made registration cards and key cards, and assigned rooms (Tr. 584-586, 590). She also had to clean the lobby, bathroom, stock shelves, and help with breakfast. *Id.* She sometimes helped guests with their luggage and was able to lift up to 25 pounds when she did (Tr. 584). Gunn testified about her previous work experience as an office manager for a tree company and as a temporary accounting clerk for a grocery store chain (Tr. 598-600, 612).

Gunn stated that the last time she used cocaine was April 2007, after she moved into a transitional home (Tr. 589). She also testified that her condition was better at the time of the

5

hearing than it had been in the past, although she could not walk far without becoming short of breath (Tr. 597-598).

b.  **Vocational Expert's Testimony**

The ALJ asked the vocational expert what type of exertion Gunn's current position at the hotel required (Tr. 606). The expert stated that a hotel clerk position was light work (Tr. 608). The ALJ then asked the vocational expert what work could be performed by someone who could lift as much as 20 pounds occasionally and 10 pounds more frequently; not work around vehicles or unprotected heights; could stoop, bend, or kneel only occasionally; and could not stand or walk for more than 50 percent of the day (Tr. 608-609). The vocational expert replied that Gunn's past jobs as an accounting clerk and office manager would qualify (Tr. 611).

The ALJ then asked if there was strictly sedentary work to which Gunn's skills would transfer (Tr. 612). The vocational expert replied that the semi-skilled jobs of office manager and motel manager, or the skilled job of accounting clerk would qualify (Tr. 613).

Gunn's attorney asked how being absent from work would affect the vocational expert's opinion (Tr. 614). The expert replied that missing more than one workday per month would make it difficult to stay competitively employed, but more than this might be permitted in the types of jobs the expert listed. *Id.*

On September 1, 2010, the ALJ found that Gunn was not disabled (Tr. 24). Specifically, while she would otherwise be considered disabled while she was abusing substances, her substance abuse disorder was a contributing factor material to the determination of disability. *Id.*

B.  **Standard of Review**

The standard of review for an ALJ's decision is whether it is supported by substantial

6

evidence and free of legal error.  *See* 42 U.S.C § 405(g); *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Golembiewski v. Barnhardt*, 322 F.3d 912, 915 (7th Cir. 2003).  However, an ALJ's legal conclusions are reviewed *de novo*.  *Haynes*, 416 F.3d at 626.  Substantial evidence is more than a scintilla and means such relevant evidence as a reasonable mind might accept to support such a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1972).  A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion.  *Haynes*, 416 F.3d at 626.  An ALJ decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues.  *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

      C.      **Gunn's Motion for Remand**

Gunn must establish that she is disabled to be entitled to benefits under the Social Security Act.  *See* 42 U.S.C. § 423(a)(1)(D).  The Act specifically defines "disability" as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled.  The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national

7

economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920; *Briscoe*, 425 F.3d at 352. If the ALJ can find that the claimant is not disabled at any step, he does not go on to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

An impairment or combination of impairments is considered severe if the applicant's physical or mental ability to perform basic work activities is significantly limited. 20 C.F.R. § 404.1521(a). The combination of impairments is taken into account, even if each individual impairment would not be considered severe. 20 C.F.R. § 404.1523. If the applicant does not meet this requirement, then the applicant is not disabled. 20 C.F.R. § 404.1520(c). In order to be considered severe, the impairment must either cause the applicant's death, or has lasted or is expected to last for a continuous period of at least 12 months. 20 C.F.R. § 404.1509. When assessing the severity of an impairment, the applicant's age, education, and work experience are not considered. *Id.* However, it is still possible for the applicant to have been disabled for a period of time in the past even if the applicant currently does not have a severe impairment. *Id.*

If the applicant's impairment or combination of impairments meets the requirements outlined in Subpart P, Appendix 1 and also meets the duration requirement, then the applicant is disabled without considering the applicant's age, work experience, or education. 20 C.F.R. § 404.1520(d). Once the ALJ finds that the applicant is not disabled after the first three steps, then the ALJ assesses the RFC. 20 C.F.R. § 404.1520(e). The RFC is the applicant's ability to do physical and mental work activities on a sustained basis despite limitations. *Id.* Once the RFC is determined, it is compared to the applicant's past relevant work to see if the applicant could still perform that type of work. 20 C.F.R. § 404.1520(f). If the applicant could still perform past relevant work, then the applicant is not disabled. *Id.* Past relevant work includes any substantial

8

work performed within the last 15 years. 20 C.F.R. § 404.1560(b)(1). The applicant has the burden to prove the first four steps, but upon reaching step five, the burden shifts to the Commissioner. 20 C.F.R. § 404.1520(e).

Gunn contends that the ALJ erred in considering her past drug abuse. The Social Security Act provides, "An individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. §423(d)(2)(C). "When an applicant for disability benefits both has a potentially disabling illness and is a substance abuser, the issue for the administrative law judge is whether, were the applicant not a substance abuser, she would still be disabled." *Kangail v. Barnhart*, 454 F.3d 627, 628 (7th Cir. 2006).

The first step in determining the materiality of the drug abuse is to determine if the claimant is disabled under the normal five step analysis. *See* 20 C.F.R. § 404.1535. Next, if the claimant is disabled, the ALJ must determine which physical and mental limitations would remain if the claimant stopped using drugs, and then determine if the remaining limitations are disabling. 20 C.F.R. § 404.1535(b)(2). Finally, if the remaining limitations are not disabling, then the drug addiction is deemed a material factor to the disability determination, and the claimant is not entitled to benefits. 20 C.F.R. § 404.1535(b)(2)(I), 42 U.S.C. §423(d)(2)(C). "The claimant bears the burden of proving that drug or alcohol addiction is not a contributing factor material to his disability." *Parra v. Astrue*, 481 F3d 742, 748-749 (9th Cir. 2007).

This Court finds that the ALJ's opinion that Gunn's cocaine abuse was a material factor to her disability was substantially supported because Gunn was disabled when she was abusing cocaine, but not disabled after she quit. Gunn stopped using cocaine when she moved into the

transitional home in March 2009. At that time, her doctor said there was nothing to indicate heart failure. Additionally, Gunn's examination by a physical therapist in March 2009 showed that she could handle work in the sedentary to light exertion categories. In December 2009, Dr. Jenkins stated that Gunn could lift 25 pounds occasionally, and Gunn herself testified that she started feeling better after she quit using cocaine, having much more stamina and strength since then. Further, Gunn had been working at a light exertion job at a hotel at the time of the ALJ hearing. The ALJ found that once Gunn stopped the cocaine abuse, she had the RFC to perform work. Before Gunn quit using cocaine, the record shows that she suffered from heart problems, which caused her physical fatigue and weakness. Because of this contrast, the ALJ found that Gunn's condition significantly improved after she stopped abusing cocaine. Therefore, this Court finds that the ALJ's decision that Gunn's cocaine abuse was a material factor to her disability was substantially supported.

### III. CONCLUSION

Because the ALJ reasonably found that Gunn's cocaine abuse was a material factor to her disability, Gunn's motion for remand is **DENIED**. Accordingly, this Court **AFFIRMS** the ALJ's decision.

    **SO ORDERED**

    Dated this 17th day of November, 2011.

                                              S/Christopher A. Nuechterlein
                                              Christopher A. Nuechterlein
                                              United States Magistrate Judge